IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Anthony McKeown, | ) | C/A No.: 1:10-1441-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| County of Greenville, Joseph Kernell, | ) | |
| John C. Few, C. Denton Matthews, Skip | ) | |
| Goldsmith, S.C. Department of | ) | |
| Corrections, Jon E. Ozmint, and its | ) | |
| Insurers, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, proceeding pro se, is currently incarcerated in the custody of the South Carolina Department of Corrections ("SCDC"). He alleges violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Before the court are the following motions: (1) Plaintiff's Motion for a Preliminary Injunction [Entry #26]; (2) Plaintiff's Motion for Default Judgment as to Goldsmith [Entry #35]; (3) Plaintiff's Motion to Strike Matthews' Answer to the Complaint [Entry #45]; (4) Defendants County of Greenville, Kernell and Matthews' Motion for Summary Judgment [Entry #49]; and (5) Defendants Ozmint and South Carolina Department of Corrections' Motion for Summary Judgment [Entry #66]. All pretrial proceedings in this case were referred to the undersigned magistrate judge pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.).

I.   Factual and Procedural Background

The matter arises out of Plaintiff's arrest and subsequent sentence for grand larceny and credit card fraud. Defendant Matthews was the solicitor representing the state at the sentencing hearing. Plaintiff was represented by Defendant Goldsmith and eventually pled guilty to both crimes, admitting that he had stolen property from the home of an elderly woman and that he had separately purchased items with another person's credit card without that person's consent.

At the sentencing hearing on August 16, 2007 for both charges, the Honorable John Few, then a circuit judge, sentenced Plaintiff to four years in prison. Judge Few gave Plaintiff the four-year sentence for the credit card fraud crime based on the mistaken belief that the crime carried at least a four-year maximum. (*See* Sentencing Sheet at Entry #1-2 at 40). However, the credit card fraud charge carried a maximum sentence of only one year, not four. S.C. Code Ann. § 16-14-60(a) (1976). The other crime, grand larceny, carried a five-year maximum sentence, S.C. Code Ann. § 16-13-30(B)(1) (1976), but Judge Few gave Plaintiff a suspended sentence for that charge.

On or about December 26, 2007, Plaintiff filed a petition for post-conviction relief ("PCR") alleging he received ineffective assistance of counsel from Defendant Goldsmith and that he was improperly sentenced by Judge Few with respect to the fraud charge. On or about May 22, 2008, Judge Few signed an order vacating the sentence as it related to the fraud charge. On August 25, 2008, Plaintiff was re-sentenced on the fraud charge by

Circuit Judge Edward W. Miller to time served and the Department of Corrections subsequently released him.[1] Plaintiff's PCR petition was later dismissed as moot.

Plaintiff originally filed a case pursuant to 42 U.S.C. § 1983, claiming he was imprisoned approximately 11 months in excess of the maximum. He requested relief based on these facts in this court on March 18, 2009, designated as *McKeown v. Ratigan, et al.*, C/A No.: 1:09-655-JMC ("First Action"). The court granted summary judgment to defendants in the First Action on September 2, 2010. During the pendency of the First Action, Plaintiff filed the instant case pursuant to 42 U.S.C. § 1983 in state court on April 27, 2010, which was removed to this court on June 7, 2010 ("Second Action"). Although only defendants Matthews and Goldsmith are common to both cases, the underlying facts and claims are essentially the same.

II.  Discussion

   A.   Plaintiff's Motion for a Preliminary Injunction [Entry #26]

Plaintiff complains in his motion for a preliminary injunction that the prison librarian has rejected his requests for legal copies in violation of the SCDC's policies. As an initial matter the court notes that, "[p]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).

---

[1] Approximately one month after his release, Plaintiff was arrested for a new crime. He remains in custody on that subsequent crime, but this action concerns his imprisonment for the fraud charges.

A petitioner seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ----, ----, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[2] A petitioner must make a clear showing that he is likely to succeed on the merits of his claim. *Winter*, 129 S.Ct. at 376; *Real Truth*, 575 F.3d at 345–46. Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. *Winter*, 129 S.Ct. at 374–76; *Real Truth*, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in the petitioner's favor. *See Real Truth*, 575 F.3d at 346-47.[3] Finally, the court must pay particular regard to the public consequences of

---

[2] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, — U.S. —, 130 S.Ct. 876 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345–347, stating the facts and articulating the standard for the issuance of preliminary injunctions before remanding it to the district court for consideration in light of *Citizens United*. *See The Real Truth About Obama, Inc. v. Federal Elections Comm'n*, 607 F.3d 355 (4th Cir. 2010).

[3] Based on *Winter*, the *Real Truth* Court expressly rejected and overruled *Blackwelder*'s sliding scale approach that formerly allowed a plaintiff to obtain an injunction with a strong showing of a probability of success even if he demonstrated only a possibility of irreparable harm. *Real Truth*, 575 F.3d at 347; *Winter*, 129 S.Ct. at 375-76.

employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 129 S.Ct. at 376-77).

By statute, the Prison Litigation Reform Act grants courts the authority to enter a temporary restraining order or an order for preliminary injunctive relief in civil actions concerning prison conditions. However,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

*Id.* at 526.

After reviewing the record in this case, the court finds that Plaintiff has not demonstrated a clear likelihood of success on the merits or that he is likely to be irreparably harmed absent injunctive relief. Plaintiff submits no evidence to support his allegations, such as a particular court deadline he missed as a result of Defendants' conduct. Although Plaintiff attests that he had an upcoming deadline, he does not show (1) that he actually missed the deadline; or (2) that his failure to make the deadline prejudiced him. In order to prove he was denied access to the courts, Plaintiff cannot rely on conclusory allegations, but must identify with specificity an actual injury resulting from Defendants' conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also, White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989). In sum, the record reflects little support for Plaintiff's alleged harm, much less the irreparable harm required for an injunction.

The Supreme Court has repeatedly stressed the need to provide wide-ranging deference to prison administrators in matters of prison management. *See Beard v. Banks*, 548 U.S. 521, 528 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Even if Plaintiff could establish a clear likelihood of success on the merits or that he is likely to be irreparably harmed absent injunctive relief, he has not shown that the balance of harm, assuming any, tips in his favor. *See Wetzel*, 635 F.2d at 288 ("The possible injury to the [prison administrators] if the preliminary injunction stands is potentially grave."). Finally, Plaintiff cannot justify the public harm that would occur if the court were to usurp prison

administrators' decision-making regarding items such as library policies based on the assertions before the court. *Id.* at 290; *Real Truth*, 575 F.3d at 347 (discussing the importance of the public interest requirement). Plaintiff's vague and conclusory statements are simply insufficient to warrant the extraordinary remedy of injunctive relief.

    B.    Plaintiff's Motion for Default [Entry #35]

Plaintiff filed a motion for default in which he swears that he served defendant Goldsmith with the complaint on June 8, 2010. However, Plaintiff attaches no proof of service, nor does he disclose the method of service. Additionally, Plaintiff has on multiple occasions since requested the court to have Goldsmith served with process. Because Plaintiff's affidavit and motion contain no proof of service on Goldsmith, the undersigned recommends that Plaintiff's motion for default be denied. Out of an abundance of caution, the undersigned has separately issued an order today directing service on Goldsmith and Few.

    C.    Plaintiff's Motion to Strike Matthews' Answer [Entry #45]

Plaintiff has also moved to strike Matthews' answer to the complaint, based on disagreements as to the applicable law and the relevant facts. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Plaintiff alleges that all of Matthews' defenses are insufficient for various reasons.

Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a

dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted. Accordingly, a motion to strike matter from an answer will not be granted, unless the moving party demonstrates that the challenged material is so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense such that its presence in the pleading throughout the proceeding will be prejudicial to the moving party." *McIntyre-Handy v. APAC Customer Servs.*, 2006 WL 721383 (E.D.Va. Mar. 20, 2006) (internal citations and quotations omitted). Plaintiff has failed to demonstrate Matthews' answer contains defenses unrelated to Plaintiff's claims. Therefore, it is recommended that Plaintiff's motion to strike be denied.

    D.    Motions for Summary Judgment

        1.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where

none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id.* The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be no genuine issue of material fact.

    2.    Defendants County of Greenville, Kernell and Matthews' Motion for Summary Judgment [Entry #49]

        a.    Claims against Matthews

Defendant Matthews argues that he is immune from suit related to his prosecutorial functions, whether sued in his individual or official capacity, based on absolute prosecutorial immunity. The undersigned agrees.

The law is clear that Matthews enjoys absolute prosecutorial immunity from claims brought pursuant to 42 U.S.C. § 1983. *Imbler v. Patchman*, 424 U.S. 409, 431

(1976) (holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). The *Imbler* Court acknowledged the broadness of its holding as follows:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. With the issue thus framed, we find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor's immunity from actions for malicious prosecution:
> 
> "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

*Imbler* at 427–428. In delineating the boundaries of its holding, the *Imbler* Court distinguished between the absolute immunity a prosecutor enjoys in activities "intimately associated with the judicial phase of the criminal process" and the good-faith defense prosecutors have when engaging in certain investigative activities. *Id.* at 430.

In the case at hand, Plaintiff's claims of harm by Matthews were undisputably within his activities associated with the judicial process.[4] Therefore, because *Imbler* is

---

[4] To the extent, Plaintiff's claims against Matthews are alleged to be unrelated to his prosecutorial position, Plaintiff has failed to state such a claim, as he has alleged no facts involving Matthews outside of the prosecutorial context.

clear that prosecutors such as Matthews enjoys an absolute immunity, Plaintiff's claims against Matthews should be dismissed.

b. Claims against County of Greenville and Kernell

Defendants County of Greenville ("Greenville") and Joseph Kernell contend they cannot be sued under a respondeat superior theory. Plaintiff has made no allegations against Greenville or Kernell personally and states that they are "sued under the doctrine of supervisory liability." Am. Compl. at 1. Plaintiff has otherwise failed to make any actual allegations against them. Neither Greenville or Kernell can be held liable on a theory of respondeat superior or vicarious liability.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Greenville or Kernell were personally responsible for any of the claims of the complaint. Plaintiff has failed to set forth any facts showing Kernell, acting on behalf of Greenville or otherwise, was aware of a pervasive,

unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Nor does Plaintiff allege a policy or custom in Greenville, which results in illegal action. Thus, because Plaintiff failed to show that County of Greenville or Kernell are liable on a theory of *respondeat superior* or supervisory liability, the claims against these Defendants should be dismissed.

        3.        Ozmint and SCDC's Motion for Summary Judgment [Entry #66].

Ozmint and the SCDC argue Plaintiff has not alleged a valid theory of liability against them. Plaintiff alleges Defendants are liable for keeping him in custody, in spite of an improper sentence.

While SCDC is charged with the custody and control of the state's inmates, SCDC is without authority to change the sentence propounded by the courts. *See e.g.*, *Sanders v. MacDougall*, 244 S.C. 160, 135 S.E.2d 836 (1964). In the instant case, Plaintiff has alleged that he was erroneously sentenced to a term of four years imprisonment on conviction of a charge that carries a maximum of one-year imprisonment. However, it is undisputed that the original Sentencing Sheet issued in this case ordered Plaintiff be committed to SCDC for a term of four years. *See* Sentencing Sheet [Entry #1-2 at 46].

While SCDC is charged with keeping track of all statutorily-mandated, sentence-related credits, including time served prior to the pronouncement of sentence, and then calculating a release date using those credits, SCDC does not possess the authority to revise the actual term of imprisonment imposed by the sentencing court. Simply put, the term of imprisonment set forth by the sentencing court is the term of

imprisonment an individual must serve, unless that term is changed by the order of a court of competent jurisdiction.

Here, SCDC did not receive notice of Judge Few's order to remand Plaintiff for re-sentencing until August 13, 2008. *See* Stobbe Aff. [Entry #66-3]. Immediately upon receiving that order, SCDC began preparing for Plaintiff's release into the custody of Greenville County, as was required by that order. *Id*. Upon contacting Greenville County, SCDC was informed that the County could not accept custody of Plaintiff until August 19, 2008. *Id*. Because the order required SCDC to release Plaintiff into the custody of Greenville County to await re-sentencing, SCDC could not release Plaintiff until it accepted custody of Plaintiff. *Id*. Plaintiff was released from SCDC into the custody of Greenville County on August 19, 2008. *Id*.

Here, SCDC and Ozmint abided by the court's order regarding sentencing and transferred Plaintiff to Greenville County's custody as soon as possible. Because SCDC and Ozmint have no power to change Plaintiff's court-ordered sentence, Plaintiff has failed to show they are liable here. Therefore, the claims against them should be dismissed.

III.  Conclusion

For the foregoing reasons, the undersigned recommends Plaintiff's Motion for a Preliminary Injunction [Entry #26], Motion for Default Judgment as to Goldsmith [Entry #35], and Motion to Strike Matthews' Answer to the Complaint [Entry #45] be denied and Defendants County of Greenville, Kernell and Matthews' Motion for Summary

13

Judgment [Entry #49] and Defendants Ozmint and South Carolina Department of Corrections' Motion for Summary Judgment [Entry #66] be granted. This case remains open as to defendants Few and Goldsmith, who have not been served. The undersigned will prepare a Report and Recommendation on Plaintiff's claims against them after their appearance and properly-filed motion to dismiss or motion for summary judgment.

IT IS SO RECOMMENDED.

December 22, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**